UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

ALLAN DAVID GRUNDY                                                                    PETITIONER

v.                                                                    CIVIL ACTION NO. 3:05-CV-106-S

RALPH T. DAILEY                                                                       RESPONDENT

**REPORT AND RECOMMENDATION**

The petitioner, Allan David Grundy, *pro se*, is serving a twenty-year sentence of imprisonment on a rape conviction and seeks a writ of habeas corpus, pursuant to 28 U.S.C. § 2254. He alleges the state deprived him of a fundamentally fair trial in violation of his rights under the United States Constitution. The respondent, Ralph T. Dailey, moves to dismiss the petition and the amended petition. For reasons stated below, the magistrate judge concludes the petitioner's claims lack merit and recommends denying the writ.

**I. FINDINGS OF FACT**

1) After exhausting his appeal and pursuing collateral remedies in state court, the petitioner now seeks federal habeas review. The Supreme Court of Kentucky set out the facts of the case as follows:

*******

When the victim, P.U., was thirteen years old, [the petitioner] raped her twice, once in early February 2001 and again in April 2001. As a result of intercourse with Appellant, P.U. became pregnant and had an abortion. The tissue from the aborted fetus underwent DNA testing to determine paternity. The results of the DNA testing evidenced a combined paternity index of 406 to 1

which translated to a probability of paternity of 99.75% by [the petitioner].

On July 19, 2001, [the petitioner] was indicted on two counts of rape in the second degree. On July 23, 2002, [the petitioner] was tried by a jury and found guilty of two counts of rape in the second degree and being a persistent felony offender in the second degree.[1]

********

2) The honorable Lisabeth Hughes Abramson, Jefferson Circuit Judge, presided over the jury trial in this matter. Various testimony explained the circumstances surrounding the events charged in the indictment, including that the victim's mother was the petitioner's girlfriend. During the relevant period, the victim resided with her mother and the petitioner in his home, along with two younger children. Once the victim began living with other relatives, she accused the petitioner of sexual abuse.[2]

3) In addition to the scientific evidence discussed above, the jury heard testimony from the victim, the victim's mother, an investigating officer, an emergency room, treating physician, Theodore Forrest, M.D., as well as a state, forensic pediatrician, Betty Spevak, M.D.[3] The petitioner also testified at trial. At issue in this petition is the testimony of the victim and the investigating officer.

4) The investigating officer, Jerry Newton (female), received a call from the victim's father and went to the petitioner's home to investigate. Detective Newton questioned the

---

[1] Appendix (docket no. 14) at 91-92 (hereinafter "App.")

[2] Memorandum of Law in Support of Petition (docket no. 1) at 1 (hereinafter "Pet. Memo.")

[3] Pet. Memo. at 1-8.

-2-

petitioner as he stood in the doorway of his home. She testified that when she asked the petitioner whether he had had consensual sex with the victim, the petitioner neither admitted nor denied having sex with the victim; instead, the petitioner said he did not have to try and convince her but told the officer to wait for the paternity results. The trial court permitted Detective Newton to testify the petitioner was flirtatious with her and that she believed he was guilty because of his response.[4]

5) In her trial testimony, the victim provided explicit details of sexual intercourse with the petitioner on the dates alleged in the indictment.[5] Under cross-examination, the victim admitted that she told her counselor she had had sexual intercourse with the petitioner twenty times. The trial court did not permit further cross-examination, however, and ruled inadmissible the counselor's documentation, which the defense obtained through confidential family court proceedings.[6]

6) In addition to the testimony of these fact witnesses, the prosecution presented evidence derived from deoxyribonucleic acid (DNA) as described in the supreme court's opinion. Specifically, the jury heard from two expert witnesses employed with Lifecodes Laboratory of Nashville, Tennessee, the laboratory under contract with the state for forensic paternity testing in this case. Deanna Lankford testified to the DNA analysis of the samples taken from the victim, the petitioner, and the aborted fetus; Lifecodes conducted both restriction fragment length polymorphism (RFLP) and polymerase chain reaction (PCR) testing, both

---

[4]Pet. Memo. at 3-4.

[5]Pet. Memo. at 2-3.

[6]App. at 99.

methodologies widely employed in DNA identification. Dr. Deborah Cutter provided testimony to explain the calculation of the statistical significance of the findings. She testified that the calculations accounted for the novel situation of having a mixed sample of fetal and maternal tissue. She further conceded when samples included fetal mixture, the American Association of Blood Banks has no standard formula for determining paternity index or percentage and that others in the related scientific field did not employ the mathematical formula she used.

## II. CONCLUSIONS OF LAW

**Standard of Review**

    1) The federal habeas statute, amended in the Antiterrorism and Effective Death Penalty Act of 1996, provides relief from a state conviction if the petition satisfies one of the following conditions:

> the [state court's] adjudication of the claim —
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). This statute further provides that state court determinations of fact are presumed to be correct. § 2254(e)(1).

    2) The Supreme Court of the United States has taken care to distinguish federal habeas review from review on direct appeal, particularly when the state court articulates the correct legal rule in its review of a claim. In this situation a "federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that

application must also be unreasonable." *William (Terry) v. Taylor*, 529 U.S. 362, 411 (2002). When a state court fails to cite any federal law or controlling Supreme Court precedent, the Supreme Court clarified that § 2254(d) "does not require citation of our cases – indeed, it does not even require *awareness* of our cases, so long as neither the reasoning nor the result of the state court decision contradicts them." *Early v. Packer*, 537 U.S. 3, 8 (2003). Where the state court fails to address the merits of a claim entirely, a federal habeas court must review *de novo* whether the state court decision is contrary to Supreme Court jurisprudence. *Clinkscale v. Carter*, 375 F.3d 430, 436 (6th Cir. 2004) (citing *Wiggins v. Smith*, 539 U.S. 510, 534 (2003)).

3) A federal habeas court may not substitute its evaluation of the state evidentiary record for that of the state trial court unless the state determination is unreasonable. *Rice v. Collins*, 126 S.Ct. 969, 976 (2006) (stating, "Reasonable minds reviewing the record might disagree ... but on habeas review that does not suffice to supercede the trial court's credibility determination.").

**Fundamental Fairness**

4) The petitioner alleges the state court proceedings denied him a fundamentally fair trial on the basis of three evidentiary rulings: 1) holding admissible Detective Newton's opinion of guilt; 2) holding inadmissible a counselor's documentation of the victim's statements placing the number at twenty; and 3) holding admissible the prosecution's DNA evidence and failing to hold a *Daubert* type hearing, see *Daubert v. Merrell Dow Pharms. Inc.*, 509 U.S. 579 (1993). None of these claims is meritorious.

5) Simple issues of state evidentiary law do not provide grounds for federal habeas relief. *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991). In *Estelle*, the Court emphasized it is not the province of a federal habeas court to reexamine state-court determinations on state-law

questions. Thus, a federal habeas court's inquiry is limited to whether errors of state evidentiary rules amounted to the denial of fundamental fairness, a petitioner's right guaranteed under the Due Process Clause of the United States Constitution. *Cooper v. Sowders*, 837 F.2d 284, 286 (6th Cir. 1988).

6) First, the Kentucky Supreme Court stated, "Whether Detective Newton actually believed [the petitioner] was guilty did not prejudice [the petitioner] as the jury would conclude Detective Newton sought an indictment because she thought [the petitioner] was guilty." The magistrate judge concurs and finds no error.

7) Second, the state supreme court held the trial court properly denied further cross-examination of the victim because the jury had heard her prior "inconsistent" statement about the number of times of sexual intercourse.[7] The petitioner's memorandum suggests, inaccurately, that the jury did not hear the victim's prior statement at all, thereby depriving him of his constitutional right to confrontation. The supreme court opinion plainly states the jury heard the victim testify under cross-examination to the number twenty.[8] The jury was thus capable of determining from the evidence whether the victim's testimony was exaggerated or credible. Again, the magistrate judge concurs and finds no error.

8) Third, the state supreme court noted that under Kentucky law, DNA evidence is admissible by judicial notice and does not require a *Daubert* type hearing. Still, the petitioner claims the trial court erred by admitting the statistical significance of the DNA evidence in this

---

[7]App. at 99. Characterizing the prior statement as inconsistent is a logical fallacy. It is possible to offer both statements for their truth because the indictment charged – and the prosecution was required to prove only – two incidents of rape and not twenty.

[8]Id.

case because Dr. Cutter's calculations were modified to account for a mixed tissue sample. Yet, the petitioner fails to articulate how the calculations are unreliable. As the state supreme court stated, "The fact there is not a national standard for indexing in mixed tissue situations does not mean that there are no scientifically acceptable procedures."[9] Reasonable jurists could just as easily conclude Dr. Cutter's use of a modified calculation enhanced rather than undermined the reliability of the probability statistics. This court's research yields no information to suggest that the statistical significance of mixed samples, as in this case, cannot be reliably quantified.

9) The state supreme court held the DNA paternity test results and statistical calculations were reliable and properly admitted, leaving the jury free to determine the expert witnesses' credibility and the weight it should give the DNA evidence. Moreover, the supreme court held there was "more than sufficient evidence to convict" even in the absence of DNA evidence: under state law, the victim's testimony alone that a rape occurred is sufficient to sustain a conviction.[10] The magistrate judge concurs and finds no evidentiary error here.

10) Even if, assuming for purposes of argument, these state evidentiary rulings were erroneous, the errors do not rise to the level of the denial of fundamental fairness. The petition fails to provide any basis for disturbing the jury's credibility determinations, particularly when the jury was given the opportunity to observe and consider the testimony of several fact witnesses, including the petitioner. None of these evidentiary rulings so undermined the fundamental fairness of the trial so as to deny the petitioner due process.

---

[9]App. at 95.

[10]Id., (citing *Garrett v. Commonwealth*, 48 S.W.3d 6, 10 (Ky. 2001)).

**Right to Counsel, Right to Continuance**

11) The primary basis on which the petitioner seeks habeas relief is the defense's inability to rebut the prosecution's DNA evidence through the testimony of an opposing expert witness. The petitioner presents this claim in the posture of the trial court's refusal to grant a continuance and the petitioner's request for new counsel on the morning of trial. At a hearing on the petitioner's motion, the petitioner explained his dissatisfaction was with his counsel's handling of the DNA issue; the defense counsel informed the trial court that the consultant expert witness, a physician with DNA Diagnostics "could not give testimony that would help [the petitioner] because in his professional opinion the Commonwealth's DNA testing was probably more accurate."[11]

12) Under a state procedural rule, the absence of a witness provides good cause for a continuance only if the movant by affidavit relates the substance of the witness's expected testimony.[12] (There is no requirement the witness must be the affiant.) Judge Abramson commenced trial proceedings because the petitioner made no such showing despite having had the time and opportunity to consult with a DNA expert.

13) The petitioner claims the state court's denial of a continuance violated his right to counsel and to present his own defense under the Sixth and Fourteenth Amendments. The state supreme court rejected the petitioner's claim on state law grounds in deference to the trial judge's wide discretion in such matters. The magistrate judge likewise concludes no federal

---

[11] App. at 92. Apparently, DNA Diagnostics determined the fetal tissue was not viable for further testing; consequently, the petitioner insisted a defense expert should challenge the chain of custody – Detective Newton collected in the evidence, the petitioner alleges, in violation of Ky. Rev. Stat. Ann. § 17.170(2).

[12] App. at 93.

Constitutional violation occurred.

14) The Constitution does not afford an indigent defendant with the right to have a particular attorney represent him. *United States v. Saldivar-Trujillo*, 380 F.3d 274, 277 (6th Cir. 2004). A trial judge has wide discretion whether to grant a substitution of counsel and must balance the accused's choice of counsel against the court's authority to control its docket in an efficient manner. *Id.* No constitutional violation arises as long as the denial of a continuance to secure counsel is not arbitrary. *Burton v. Renico*, 391 F.3d 764, 771 (6th Cir. 2004) (citing *Morris v. Slappy*, 461 U.S. 1, 11 (1983)). A defendant must show that the denial of a continuance actually, not just theoretically, prejudiced the defense. *Id.* (citing *Ungar v. Sarafite*, 376 U.S. 575, 589 (1964)).

15) The magistrate judge concludes the denial of the motions to continue and to dismiss defense counsel was not arbitrary. The petitioner was dissatisfied that his counsel made the strategic decision not to call the DNA Diagnostics physician to the stand because he could not be expected to refute or to impeach the commonwealth's DNA testing or probability statistics. The state supreme court affirmed the trial court's reasoning that the issues the petitioner raised, such as chain of custody, go to the weight, not the admissibility, of the evidence. Again, state law claims are not cognizable grounds for federal habeas relief.

16) The petitioner claims, nevertheless, Judge Abramson failed to perceive the complexity of the DNA evidence and that the denial of the continuance prejudiced his defense. Yet to date, the only basis on which the petitioner assails the reliability of Dr. Cutter's calculations is the absence of a national protocol – an unavailing argument for reasons stated above. More to the point, there are no grounds for concluding any expert would testify the

statistical probability would have been more favorable to the defense had the trial granted the continuance. Absent a showing of actual prejudice, there are no grounds for concluding the state court rulings were so arbitrary as to constitute a denial of due process or right to counsel.

**Sentence Enhancement Claim**

17) Finally, the petitioner challenges his conviction as a second-degree persistent felony offender. Specifically, the petitioner argues the prior conviction was not final, based on the interpretation of state statutory requirements, for purposes of a PFO sentence enhancement. This state law claim fails to implicate any right under the federal Constitution. It presents no cognizable claim under federal habeas review and plainly lacks merit.

### III.  RECOMMENDATION

The magistrate judge concludes the petition contains no grounds for concluding the state court's decision affirming the conviction is contrary to Supreme Court precedent. The magistrate judge further concludes the state court's adjudication of the petitioner's claims did not result in a decision that was contrary to, or an unreasonable application of, clearly established federal law. Because the petition fails to satisfy the requirements of § 2254, the magistrate judge recommends dismissing the petition.

### IV.  CERTIFICATE OF APPEALABILITY

If the district court agrees with the magistrate judge's recommendation in this matter, it must determine whether a certification of appealability should issue. The court may issue a certificate of appealability only if the petitioner "has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). Under this standard, the petitioner must demonstrate that reasonable jurists would find the district court's assessment of his claims

debatable or wrong. *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

The magistrate judge is persuaded that reasonable jurists would not find debatable or wrong the correctness of the assessments made in this report and recommendation. Accordingly, the magistrate judge recommends that the court decline to issue a certificate of appealability.

DATE:

## **NOTICE**

Within ten (10) days after being served a copy of these proposed findings of fact, conclusions of law, and recommendation, any party who wishes to object must file and serve written objections, or further appeal is waived. *Thomas v. Arn*, 782 F.2d 813 (6th Cir. 1984); 28 U.S.C. § 636(b)(1)(C). A party may file a response to another party's objections within ten (10) days after being served with a copy thereof.